**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **1. RUTH C. PITTMAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **CIV-14-235-TCK-FHM** |
| ) | |
| **1. BOKF, N.A., a/k/a BOK FINANCIAL CORPORATION, and BANK OF OKLAHOMA MORTGAGE,** ) | |
| ) | **ATTORNEY LIEN CLAIMED** |
| **Defendant.** ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Ruth C. Pittman, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1. Plaintiff, Ruth C. Pittman, is an adult female resident of Tulsa County, Oklahoma.

2. Defendant BOKF, N.A., a/k/a BOK Financial Corp., and Bank of Oklahoma Mortgage, is an entity doing business in Tulsa County, Oklahoma.

## JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of: (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), (b) disability discrimination and retaliation in violation of the ADA and ADAAA, (c) retaliation for use of leave under the Family Medical Leave Act

("FMLA"), and (d) violations of the Equal Pay Act.

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

5. All of the actions complained of herein occurred in Tulsa County, Oklahoma. Defendant is doing business in such county and may be served in said county. Tulsa County is located in the Northern District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 16, 2013. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated November 5, 2013 (received by Plaintiff by mail thereafter), however, this Dismissal and Notice of Right to sue was vacated on or about December 16, 2013, and an amended Charge of Discrimination was filed with the EEOC on or about December 23, 2013. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated May 1, 2014 (received by Plaintiff by mail thereafter), and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Plaintiff, Ruth C. Pittman, is an adult female who was born in December1969, making her over the age of forty (40) at all times relevant to this action.

8. Plaintiff began her employment with Defendant as a temporary employee in or around February 2009. She was then hired full-time by Defendant on or about November 16, 2009 as a Loss Mitigation Specialist.

9. Throughout Plaintiff's employment, she was consistently recognized as a satisfactory or better employee, received annual merit increases in pay and Presidential Discretionary Bonuses.

10. Throughout the majority of Plaintiff's employment, her direct supervisor was Tom Dorothy. However, in or around December 2012, Mr. Dorothy was replaced by Vicki Wright. Mr. Dorothy and Ms. Wright reported to Vice President Scott Patterson, who reported to the Senior Vice President.

11. In or around October 2011, a male who was offered employment by Defendant told Plaintiff his salary. His salary was substantially more than Plaintiff's and other similarly situated female employees' salaries despite the fact that they performed the same or substantially similar job duties.

12. Plaintiff complained to Mr. Dorothy about this pay disparity who stated that the male employee's offer was based on the current market rates of pay for new hires and that in order for Plaintiff to receive the same pay, she would have to quit then re-apply for the position. However, this is contrary to the fact that a female employee who was hired at the same time as the male employee in question was being paid substantially less than the male as well.

13. In or around December 2011, Rachel Jones became a Senior Vice President over Plaintiff's department. Upon meeting the Loss Mitigation team, Ms. Jones stated that she "hate[s] loss mitigation."

14. Shortly thereafter, Plaintiff and two other Loss Mitigation employees were called into Ms. Jones' office along with Vice President Patterson and verbally chastised for issues within the Loss Mitigation department. However, Plaintiff was unaware of the issues and was not part of any of the alleged problems. When Plaintiff asked for specific instances of what she allegedly did wrong, Plaintiff was given examples of mistakes made by other employees of Defendant, some even from other branch locations.

15. Ms. Jones also asked Plaintiff if she intended to leave her job, as she had file boxes under her desk. Plaintiff explained that many of the Loss Mitigation employees kept boxes of the necessary files for their accounts by their desks to facilitate their job duties. In response, Ms. Jones recklessly accused Plaintiff of lying.

16. On or about March 30, 2012, Plaintiff was called into Mr. Dorothy's office with Patterson present. Plaintiff received a verbal reprimand for allegedly making errors on three loan files. However, two of the files were not Plaintiff's files. And, Plaintiff believed an accounting error had been made on the third file when not in her possession. When Plaintiff made efforts to obtain the third file for review, she was told by the vault that no such file existed.

17. On or about April 5, 2012, Plaintiff wrote a detailed letter to Human Resources expressing her concerns with her unjustified verbal reprimands.

18. And, due to the hostile work environment, Plaintiff sought to transfer to a different department beginning in or around mid-May 2012. Plaintiff applied for approximately ten (10) positions, none of which were offered to her. When Plaintiff spoke to HR manager April Barnett about the positions, she was told she did not receive them allegedly due to poor performance reviews and some absences. However, Plaintiff had received only positive evaluations since her hiring and explained that her absences were related to the care for her son who has only one kidney and suffers from a kidney disease.

19. In or around November 2012, Plaintiff was issued further discipline for absences related to her time off to care for her son. Due to the time Plaintiff needed off for the care of her son and her upcoming surgery to remove her gallbladder, Plaintiff filed for intermittent FMLA in or around December 2012.

20. In addition, Plaintiff took FMLA leave on or about January 16, 2013 to have her gallbladder removed. Plaintiff was off work for approximately two (2) weeks for such medical procedure.

21. In or around early February 2013, Plaintiff took a day off to have a follow-up appointment with her doctor to assess her recovery from her surgery. Upon her return to work, Plaintiff noticed that the day off had been classified as vacation, not FMLA. Plaintiff spoke with Patterson about how the day should have been classified as FMLA and her

concern over what would happen if she ran out of vacation time. Patterson responded that he was going to leave the day as vacation, and they would deal with her lapse of vacation time when it actually happened.

22. On or about February 21, 2013, less than a week before Plaintiff was terminated, Plaintiff notified her direct supervisor, Ms. Wright, that she was diagnosed with bulging disks in her spine, which created severe back pain.

23. Plaintiff was then terminated on or about February 26, 2013, approximately two weeks after her conversation with Patterson. The reason given was alleged misconduct. Particularly, Plaintiff was told she was not making notes on the computer system about contacting customers pursuant to policy and that this could lead to large fines for Defendant. However, the reason given was merely pretext for discrimination and retaliation. Plaintiff had not seen any such policy and was making notes in the paper files which were later entered into the computer, as was the custom and practice for Plaintiff's position. Additionally, Defendant has failed to provide any such policy and cannot present evidence to show Plaintiff did not contact the customers in question.

24. Due to Plaintiff's medical conditions related to her gallbladder and bulging disks, Plaintiff is a qualified individual with a disability within the meaning of the ADA and ADAAA in that she was disabled, had a record of a disability, and/or was perceived as disabled. Her disabilities substantially limit and/or limited her in one or more major life activities, including but not limited to standing, sitting, lifting, pushing, walking, pulling and

frequent use of the restroom . Her disabilities also impact one or more of her internal bodily processes, including but not limited to digestive and musculoskeletal functions. However, at all times relevant hereto, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

25. Upon information and belief, Plaintiff was replaced by a significantly younger individual.

26. As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADA AND ADAAA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

27. The matters alleged above constitute discrimination and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

28. More specifically, Plaintiff was a qualified individual with a disability in that she suffers from a physical impairment (i.e., gallbladder and back issues) which substantially limits her ability to perform one or more major life activities as set forth above. Further, Plaintiff's disabilities impact one or more of her internal bodily processes as shown herein.

29. Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

30. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

31. Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

**COUNT II: FMLA**

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

32. The matters alleged above constitute interference with and retaliation for Plaintiff's use and/or attempted use of medical leave in violation of the Family Medical Leave Act.

33. Plaintiff was entitled to medical leave because she required time off to care for herself and her son due to serious health conditions (as set forth above) and worked for Defendant (i.e., an entity with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

34. Defendant interfered with and retaliated against Plaintiff for her use of time off.

35. As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

36. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost wages (past and future), liquidated damages (based on the willfulness of Defendant's violation of the FMLA), attorney fees and costs.

**COUNT III- Equal Pay**

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

37. The acts above-described constitute a violation of the Equal Pay Act which prohibits wage disparity based on gender.

38. While employed with Defendant, Plaintiff received less pay despite performing the same or substantially similar job duties as her male counterparts.

39. As the direct and proximate result of Defendant's actions, Plaintiff has suffered lost wages and is entitled to her lost income, past and future, and such remedies as the law may allow including remedies for the willful nature of the discrimination.

**COUNT IV - ADEA**

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

40. The matters alleged above constitute violations of the ADEA in the form of age discrimination.

41. Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was terminated, and her position was not eliminated at the time of her termination.

42. As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991. Plaintiff is also entitled to liquidated damages based upon Defendant's willful conduct.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 14th DAY OF MAY, 2014.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800 (telephone)
(405) 239-3801 (facsimile)
leonardjb@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED